# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| EMMA GONSALVES, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| v. | ) | Judge |
| | ) | Magistrate Judge |
| COLTEN MORTGAGE, LLC, | ) | |
| | ) | Jury Demand |
| Defendant. | ) | |

## COMPLAINT

For her Complaint against Defendant Colten Mortgage, LLC ("Defendant"), Plaintiff Emma Gonsalves ("Ms. Gonsalves") states:

## PARTIES

1. Ms. Gonsalves is a citizen and resident of Nashville, Tennessee, and a former employee of Defendant.

2. Defendant is a Colorado limited liability partnership with its principal place of business at 6021 S. Syracuse Way, Suite 104, Greenwood Village, CO 80111-4747. Defendant may be served with process through its registered agent, Paracorp Incorporated, 992 Davidson Drive, Suite B, Nashville, Tennessee 37205-1051.

## JURISDICTION AND VENUE

3. This is an action for equitable relief and damages for unlawful employment practices brought under the Tennessee Disability Act, Tenn. Code Ann. § 8-50-103 ("TDA"). The Court has jurisdiction under 28 U.S.C. § 1332 as Defendant is a Colorado limited liability company with its principal place of business in Greenwood Village, Colorado, and the amount in controversy exceeds the jurisdictional minimum of $75,000. Venue is proper under 28 U.S.C. §

1391 as Plaintiff resides within, Defendant maintains an office and conducts business within, and the conduct complained of occurred within the Middle District of Tennessee.

4. Ms. Gonsalves reserves the right to amend this Complaint to assert her claims under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, *et seq.* ("ADA"). She timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") as to her ADA claims. Once she obtains a Notice of Suit Rights from the EEOC, she will timely amend this Complaint to include her claims under the ADA.

## FACTS

5. Ms. Gonsalves worked for Defendant as an MBA student intern from September 15, 2020, to December 2020, and was then hired by Defendant as a Recruitment Coordinator starting on February 17, 2021.

6. Ms. Gonsalves was qualified for her job with Defendant and performed it in an excellent manner as evidenced by her Employee Appraisal Form completed by her supervisor, Devin Harper, on July 20, 2021, her being nominated for "Colten Rockstar" in April, May, June, and July 2021, and praise she continuously received from her supervisors for her work.

7. In late June or early July 2021, Ms. Gonsalves received a promotion and salary increase. On July 27, 2021, she was again promoted to work with "Coach" Michael Burt and received another salary increase.

8. Throughout her employment with Defendant, Ms. Gonsalves did not receive any disciplinary action or performance improvement plans.

9. Ms. Gonsalves is an otherwise qualified individual with disability, Muscular Dystrophy and related conditions, within the meaning of the TDA and the ADA. Her covered impairment substantially limited her in one or more major life activities.

10. Defendant knew of Ms. Gonsalves' disability, regarded her as having an impairment, and she had a record of having an impairment.

11. During her employment with Defendant, Ms. Gonsalves experienced some flare ups of her impairment and suffered complications. She saw a physician in April and May 2021 for severe and painful bloating, was admitted to the hospital on May 19, 2021, and June 10, 2021, and had a surgical procedure on July 19, 2021. On August 31, 2021, she saw another physician and received a "severe for pre-cancerous cells" test result on October 1, 2021. On November 1, 2021, she had another surgical procedure.

12. Notwithstanding her known impairment, Ms. Gonsalves was otherwise qualified to perform the essential functions of her job for Defendant, with or without reasonable accommodation.

13. Ms. Gonsalves requested reasonable accommodations from Defendant, including but not limited to working from home from time to time and limited periods of medical leave for doctors' appointments and medical treatment.

14. Ms. Gonsalves used her accumulated Paid Time Off ("PTO") provided by Defendant for her medical appointments.

15. On Friday, November 19, 2021, after work, Ms. Gonsalves drove to Washington, Georgia, to speak at a community event.

16. On Saturday, November 20, 2021, Ms. Gonsalves advised Mr. Burt that she would be using one of her accumulated PTO days to travel back to Tennessee. Mr. Burt responded, "That's great. Congrats" and advised her that she could do so. Defendant approved the PTO day, as well.

17. On Sunday, November 21, 2021, Mr. Burt sent Ms. Gonsalves an email explaining his alleged protocol for using PTO, even though she worked for and was paid by Defendant and had followed its procedures in using PTO.

18. In his November 21, 2021, email to Ms. Gonsalves, Mr. Burt stated, "*When you factor in time off for doctor visits*, requested time off at Thanksgiving . . . and our company complimenting the team with a day off on Friday you would have only worked one day this coming week and that's not fair to our other team members . . . ."

19. Ms. Gonsalves did not take any time off that she was not entitled to under Defendant's policies and the law.

20. Ms. Gonsalves used her accumulated PTO days and was entitled to medical leave for "doctor visits" as a reasonable accommodation of her disability.

21. Ms. Gonsalves never exceeded her allotted amount of accumulated PTO at any time during her employment with Defendant. She still had three days of PTO remaining when Defendant discharged her.

22. Burt and Defendant were not permitted to "factor in time off for doctor visits" in making the decision to discharge Ms. Gonsalves; but, that is precisely what they did.

23. On November 23, 2021, Mr. Burt sent Ms. Gonsalves a text message stating that he "met with both [CEO] Brant [Phillips] and [Branch Manager] Jim [Stuart] yesterday [November 22] to discuss your role with me and Colten on how we would like to move forward." Burt continued, "You are not required to report to either office today while we finalize these discussions and decide on your role." Burt further stated that he would get back with Ms. Gonsalves later that day.

24. Ms. Gonsalves was confused by Mr. Burt's email and message threatening her job at least in part for taking leave for medical appointments. Thus, on November 23, 2021, she called Mr. Phillips and asked if she had correctly requested and exercised PTO and if there was anything else she needed to do to ensure she was meeting all needs.

25. In their November 23, 2021, call, Mr. Phillips assured Ms. Gonsalves that she had correctly requested and exercised PTO and did not mention any concerns about her work, performance, attendance, behavior, or anything else.

26. Ms. Gonsalves also followed up with Branch Manager Stuart on November 23, 2021, in a text message. She expressed concerns about some of the tasks Burt was having her do on Defendant's payroll, including taking out his trash, filling his car with gas, getting his car serviced, ordering his food, making him plates of lunch, refilling his water bottle, packing his suitcase with books, and scheduling his COVID-19 tests, among other things.

27. Ms. Gonsalves further advised Mr. Stuart in her November 23, 2021, text message that "[t]hese past 7 months my health has been atrocious and I've had numerous hospital visits, a cancer scare, and operation, etc."

28. Ms. Gonsalves further advised Mr. Stuart in her November 23, 2021, text message that she had taken "a formal PTO day through Colten" on November 22, 2021, and opposed Burt's reprimanding her about it. She advised Stuart that she "did not know [she] had to ask [Burt's] permission to take a day versus mentioning [she] handled [it] through Colten," which Burt had previously stated she had to do.

29. Mr. Stuart responded to Ms. Gonsalves' November 23, 2021, text message stating, "Wow . . . that's a lot to process. Let me talk with Brant [Phillips], get his take, I'll be in touch."

Ms. Gonsalves thanked him and let him know she had called Mr. Phillips and confirmed that she had followed the proper procedure for exercising PTO.

30. On the afternoon of November 23, 2021, after learning that Ms. Gonsalves had opposed his discriminatory conduct to Phillips and Stuart, Burt removed Ms. Gonsalves from a team text message thread she had been a part of for months.

31. Ms. Gonsalves called Mr. Burt and texted him on the afternoon of November 23, 2021, but he did not respond.

32. Further, no one with Defendant contacted Ms. Gonsalves from November 24 – 28, 2021, which included the Thanksgiving holiday and prescheduled days off for her and the work team.

33. Thus, on the morning of Monday, November 29, 2021, Ms. Gonsalves emailed Mr. Phillips, Mr. Stuart, and Mr. Burt inquiring about her job status.

34. On November 29, 2021, Defendant's former Human Resources Director, Kristen Mrdjanov, called Ms. Gonsalves and stated that her employment was terminated effective immediately.

35. Ms. Gonsalves asked Ms. Mrdjanov why her employment had been terminated. Ms. Mrdjanov stated that "Coach Burt does not think you are working hard enough and no longer wants to work with you," so Defendant was terminating her employment. Ms. Mrdjanov could not provide Ms. Gonsalves any related examples or evidence supporting this alleged reason.

36. Defendant replaced Ms. Gonsalves with a nondisabled individual and treated her differently and less favorably than similarly situated, nondisabled employees who had not requested reasonable accommodations or opposed discrimination.

37. On January 10, 2022, Ms. Gonsalves emailed Defendant's Communications Director, Imogen Coe, requesting a separation notice "stating [her] separation date from Colten Mortgage along with the reasoning for [her] separation."

38. Ms. Coe incorrectly responded that "TN does not require a separation notice by law" and stated that Defendant "do[es] not normally supply" such a notice.

39. Ms. Gonsalves advised Ms. Coe that she believed Tennessee law did require Defendant to provide her a separation notice and again requested one.

40. On January 11, 2021, Ms. Coe provided Ms. Gonsalves a back-dated separation notice incorrectly stating that it had been "completed and released to [Ms. Gonsalves]" on November 30, 2021.

41. In the box on the separation notice asking it to "explain the circumstances of this separation," Defendant stated, "Employee performance was unsatisfactory. This is a permanent separation."

42. Defendant's alleged reason for discharging Ms. Gonsalves is a pretext for discrimination and/or retaliation. Such reason is false, did not actually motivate her discharge, and/or was insufficient to motivate it.

43. Defendant originally stated on November 29, 2021, that it discharged Ms. Gonsalves because "Coach Burt does not think you are working hard enough and no longer wants to work with you." On January 10, 2021, when pressed for a separation notice, it stated that it discharged her because her "performance was unsatisfactory." It later added alleged failure to attend work and unprofessional behavior to its hodgepodge of excuses for discharging her.

44. First, all formal documentation regarding Ms. Gonsalves "performance" demonstrated that it was more than satisfactory, as did her performance reviews, nominations for

7

"Colten Rockstar," multipole promotions, multiple pay raises, and numerous communications from her supervisors.

45. Further, after her discharge, Ms. Gonsalves learned from a former co-worker that her former supervisor, Mr. Harper, made negative statements about her "disabilities" and stated, "No one can control their disabilities but there is no way she had three doctor's appointments every week. She took advantage of her illness and used it to get time off work. I can't be the boss that tells her she can't go to her appointments, so I just had to deal with it."

46. While Ms. Gonsalves did not have "three doctor's appointments every week," Mr. Harper's statements to multiple other employees are further evidence of disability discrimination and retaliation.

47. Moreover, Defendant treated Ms. Gonsalves differently and less favorably in the terms, conditions, and privileges of employment than nondisabled employees because of her disability, requests for reasonable accommodation, and/or opposition to discrimination. Other employees took more time off and exercised their PTO days as they saw fit and were not discharged for doing so.

48. Ms. Gonsalves engaged in protected activity when she requested reasonable accommodations, including intermittent or limited periods of medical leave, and when she opposed and reported Burt's discriminatory conduct.

49. Shortly after she engaged in protected activities, Burt recommended that Ms. Gonsalves be discharged and Defendant discharged her.

50. Mr. Burt and Ms. Mrdjanov admitted the actual motivation for, and Burt's influence on, the discharge decision in their communications with Ms. Gonsalves. Burt expressed that he

did not like the fact that she was using her PTO, including "for doctor's visits," and urged Defendant to discharge her because of her exercise of protected rights.

51. Burt recommended that Ms. Gonsalves be discharged and Defendant discharged her because of an actual and/or a perceived impairment, because of her requests for and exercise of reasonable accommodations and medical leave, because she opposed Burt's discriminatory conduct, and/or because they believed she would need to exercise additional leave as a reasonable accommodation of her disability.

52. After Burt recommended that Defendant discharge Ms. Gonsalves, Defendant did not discharge and hired, retained, transferred and/or promoted less qualified non-disabled individuals who had not requested reasonable accommodations or opposed discrimination in job positions that it did not offer or provide Ms. Gonsalves.

53. As described above, Defendant discriminated against Ms. Gonsalves in the terms, conditions, and privileges of employment, subjected her to disparate treatment, discharged and failed and refused to retain her in any capacity as an employee because of a disability and/or a perceived impairment.

54. As described above, Defendant retaliated against Ms. Gonsalves and discharged her for requesting reasonable accommodations and/or for opposing and reporting disability discrimination.

55. Defendant's conduct as described in this Complaint was malicious and/or recklessly indifferent to Ms. Gonsalves' protected rights.

56. As a direct result of Defendant's discriminatory and retaliatory conduct, Ms. Gonsalves has lost income and other privileges and benefits of employment; suffered

embarrassment, humiliation, emotional distress and anxiety, inconvenience, and loss of enjoyment of life; and incurred attorneys' fees, costs and litigation expenses.

**RELIEF REQUESTED**

WHEREFORE, Ms. Gonsalves respectfully requests:

1. A jury trial;

2. Back pay and damages for lost benefits;

3. Compensatory damages for embarrassment, humiliation, emotional distress and anxiety, inconvenience, and loss of enjoyment of life;

4. Front pay and damages for lost benefits;

5. Punitive damages;

6. Attorneys' fees, costs and litigation expenses;

7. Prejudgment interest and, if applicable, post judgment interest; and

8. Such other and further legal or equitable relief to which she may be entitled.

Respectfully submitted,

s/Douglas B. Janney III
Douglas B. Janney III (BPR No. 19112)
Law Office of Douglas B. Janney III
2021 Richard Jones Road, Suite 310A
Nashville, Tennessee 37215
(615) 742-5900
doug@janneylaw.com

Attorney for Plaintiff